MURIEL BRYANT *vs.* CITY OF BOSTON & others.

Suffolk.   April 17, 1980. — February 26, 1981.

Present: HALE, C.J., ARMSTRONG, & KASS, JJ.

*Municipal Corporations*, Liability for tort, Officers and agents.  *Public Officer.  Boston.  Actionable Tort.  Building.  Notice.*

The city of Boston could not be held liable on a complaint alleging un-
  lawful demolition in 1972 of a house owned by the plaintiff which had
  been found to be in an unsafe and dangerous condition; nor could the
  city's then building commissioner be held liable where there was
  nothing in the evidence to warrant a finding that he had acted with
  malice or bad faith with respect to the razing of the plaintiff's house.
  [452-453]
In an action to recover damages for the allegedly unlawful demolition
  of the plaintiff's house, the liability of the corporation which had
  razed the house under a contract with the city of Boston turned on
  whether the city was authorized by law to order an entry on the plain-
  tiff's premises and the razing of the buildings thereon [453-454]; and
  the judge erred, therefore, in directing a verdict for the corporation
  where there was evidence which would have warranted a finding that
  the city had not complied with the notice provisions of St. 1938,
  c. 479, § 116(*d*), as in effect prior to St. 1972, c. 802, § 64, by its
  failure to make a reasonable inquiry to discover the plaintiff's address
  [454-455].
A requirement on a notice by the building commissioner of the city of
  Boston under St. 1938, c. 479, § 116(*d*), as in effect prior to St. 1972,
  c. 802, § 64, that any appeal from the order be filed "forthwith" did
  not invalidate the notice as matter of law.   [455]

TORT.   Writ in the Superior Court dated August 21, 1973.
The action was tried before *Paquet*, J.

*William H. Shaughnessy* for the plaintiff.

*John L. Keefe*, Assistant Corporation Counsel (*Rosalind Niles*, Assistant Corporation Counsel, with him) for the city of Boston & another.

ARMSTRONG, J.   This is an action to recover damages for the allegedly unlawful demolition of a house owned by the

plaintiff at 77 Westminster Avenue in the Roxbury district of Boston. At the close of the evidence the judge directed verdicts to enter for each of the three defendants: (1) the city; (2) Richard Thuma, the city's then building commissioner, who had ordered the house razed, and who appears to be sued in his individual capacity; and (3) the Duane Corporation, which had razed the house under a contract with the city. The case is before us on the plaintiff's appeal from the ensuing judgment.

The evidence would have warranted the jury in finding these facts: The house in question had two stories, plus a full basement and attic, and a two-car garage. It was finished in stucco with wood trim. The plaintiff bought the house in 1953 and lived there until 1964. She remodelled the house into two apartments, one on each of the two living floors, with separate facilities, including separate furnaces. She rented the apartments until May, 1972, when there was a fire in the first floor hallway. The tenants vacated, and the plaintiff boarded the house up.

On June 12, 1972, the building department received a complaint. On June 14 an inspector examined the house, found it to be "in an unsafe and dangerous condition" under St. 1938, c. 479, § 116(d) (as in effect prior to St. 1972, c. 802, § 64), and filled out a form recommending that it be razed. The then building commissioner (the defendant Thuma) approved the request and on June 15, 1972, forwarded a letter to the mayor seeking his approval for the razing as required by § 116(d). The mayor signed his approval, over a date stamp of June 15, 1972.[1]

On June 29, 1972, the building department mailed the plaintiff a notice, signed by one Martin, the deputy building commissioner, to the effect that the house at 77 Westminster Avenue had been determined unsafe and dangerous, that

---

[1] A clerk in the demolition division of the building department testified that the mayor approved the request on August 10, 1972. This may have been an inadvertence; nothing was made of the point either at trial or in this court. We overlook that testimony because, on the view we take of the case, it would not change the result.

she should apply for a permit to repair or raze the house; that, if she were to fail to do so "forthwith," the department "may enter" and make the house safe or remove it; that the cost of such work would be billed to her; and that her right of appeal from the order "expires . . . forthwith." [2] An identical notice was posted on the front door of the house at 77 Westminster Avenue. The mailed notice was sent by certified mail, return receipt requested, to the plaintiff at 56 Esmond Street in the Dorchester district of Boston. It was returned to the department undelivered, with a post office notation to the effect that the plaintiff had moved, leaving no forwarding address. She had in fact been living at 8 Montrose Street in Boston since 1970 but had not notified the building department of that address, as she was required to do by St. 1960, c. 355, § 1. On August 8 the demolition of the plaintiff's Westminster Avenue house was put out to bid along with several other properties. The defendant Duane Corporation, as the winning bidder, applied on August 16 for a demolition permit and by August 23 had razed the house and graded the land. The plaintiff, who had been on a trip to Barbados during the month of August, first learned of the demolition order after she had returned to the United States on August 24 and saw the vacant parcel where her house used to be.

On this evidence the jury could not have been permitted to return a verdict against the city. The function of razing unsafe structures is governmental in nature rather than proprietary, *New England Trust Co.* v. *Boston,* 300 Mass. 321, 326-328 (1938), and the limited repealer of municipal immunity effected by St. 1978, c. 512, §§ 15 & 16, applies only to causes of action arising on or after August 16, 1977.

---

[2] A right of appeal to the board of appeal is conferred by St. 1938, c. 479, § 118(a) (as in effect prior to St. 1972, c. 802, § 64); the time for appeal by one "who has been ordered by the commissioner to incur expense" is thirty days from the date of the order, "except that, in case of a building or structure which, in the opinion of the commissioner, is unsafe or dangerous, the commissioner may in his order limit the time for such appeal to a shorter period."

*Vaughan* v. *Commonwealth,* 377 Mass. 914 (1979). This court's decision in *Worcester* v. *Eisenbeiser,* 7 Mass. App. Ct. 345, 348-349 (1979), on which the plaintiff relies, is not on point, for there the city failed to raise the issue of municipal tort immunity either in the trial court or in its brief in this court,[3] and the applicability of that defense was consequently not considered or passed upon by this court in its opinion. See Mass.R.A.P. 16(a)(4), as amended, 367 Mass. 921 (1975). The judge correctly directed a verdict for the city. The same is true of the direction of a verdict for the defendant Thuma. There was nothing in the evidence which would have warranted a finding that his own actions with respect to the razing of the plaintiff's house were tainted by malice or bad faith, see *Gildea* v. *Ellershaw,* 363 Mass. 800, 820 (1973), and he is not made to answer personally for the mistakes of his subordinates. *Moynihan* v. *Todd,* 188 Mass. 301, 305 (1905). *Trum* v. *Paxton,* 329 Mass. 434, 438 (1952). *Oeschger* v. *Fitzgerald,* 2 Mass. App. Ct. 472, 475 (1974).

The liability of the Duane Corporation turns on whether the city was authorized by law to order an entry on the plaintiff's premises and the razing of the buildings thereon. See *Wamesit Power Co.* v. *Allen,* 120 Mass. 352, 355 (1876); Restatement (Second) of Agency § 348A (1958). The city's authority, in turn, depended on whether it had complied with the provisions of the statute (§ 116[*d*]) under which it acted. *Wamesit Power Co.* v. *Allen, supra. Worcester* v. *Eisenbeiser, supra* at 347. See also *Kolas* v. *LaRochelle,*

---

[3] Massachusetts Rule of Civil Procedure 8(c), 365 Mass. 750 (1974), requires that a party expressly set forth affirmative defenses in his answer. *Jakobsen* v. *Massachusetts Port Authy.,* 520 F.2d 810, 812-813 (1st Cir. 1975), held that a limitation on the liability of the Massachusetts Port Authority was waived where it had not been pleaded affirmatively under the cognate Federal rule, Fed.R.Civ.P. 8(c). The appellate record in *Worcester* v. *Eisenbeiser, supra,* shows that the city failed to plead municipal immunity in its answer to Eisenbeiser's claim, and the record is silent as to its having been raised at any later point in the litigation. Municipal immunity was not mentioned by either party in the briefs on appeal.

270 Mass. 49, 54 (1930); Restatement (Second) of Torts § 211, Comment i (1965). Without such compliance by the city, the corporation's good faith belief that it had authority to enter and raze would not, of course, excuse it. *Id.* Comment e. *Cumberland Corp.* v. *Metropoulos,* 241 Mass. 491, 503 (1922). Nolan, Tort Law § 31, at 39 (1979).

The decisive question, then, is whether the city complied with the notice provisions of § 116(*d*). That subsection requires that the "order shall be in writing and shall be addressed and delivered, or mailed, postage prepaid, to the owner or tenant, if he is known and can be found, or otherwise by posting an attested copy of the order in a conspicuous place upon an external wall of the building." The evidence was uncontroverted that the order was posted; but the implication of the word "otherwise" is that posting does not suffice if notice may be given the owner by delivery in hand or by mail. In *DiMaggio* v. *Mystic Bldg. Wrecking Co.,* 340 Mass. 686, 690 (1960), it was held that a notice sent by mail complied with § 116(*d*) although it was not received, but in that case the notice was mailed to an address where the owner in fact lived and was returned marked "unclaimed." *Id.* at 688. In this case the notice was mailed to an address where the owner did not live, and the department, by reason of the postal notation on the returned envelope, and by the admission of one of its clerks, had actual notice of that fact. The statute requires notice by delivery or mail if the owner "is known and can be found." Here, the owner was known. We think that the words "and can be found" imposed on the department an obligation to go beyond its own records to discover the owner's actual address.[4] The plaintiff put in evidence rec-

---

[4] We recognize that the plaintiff was required by St. 1960, c. 355, § 1, to notify the department of any change of address within five days of the date of the change. A failure to do so is made punishable by a fine of $100. We do not think that statute should be read to carry the additional penalty of non-notification of condemnation, where the department has actual knowledge that the owner does not reside at the address shown in the department's records, and where the actual address may be readily obtained by minimal exertion.

ords of the city's assessing department, real property tax division, from the period in question, which mentioned the plaintiff's address at that time (8 Montrose Street). The plaintiff also introduced in evidence the voting lists maintained by the city's supervisor of elections, which showed that the plaintiff was listed as a registered voter residing at 8 Montrose Street for the years 1971 and 1972. There was also evidence that the department in 1972 could have discovered her 8 Montrose Street address by looking under her name[5] in the Boston telephone directory. In view of that evidence it should have been left to the jury to determine, as a question of fact, whether the plaintiff could have been found by reasonable inquiry and whether in consequence the city failed to comply with its obligation under § 116(d) to give notice to the owner before entering and razing the house.

Three other points may arise on retrial. (1) Section 116(d) expressly authorizes the building commissioner to shorten the appeal period, and it cannot be said that his requiring any appeal to be filed "forthwith" invalidates the notice as matter of law. Contrast *Liberty Mutual Ins. Co.* v. *Wolfe*, 7 Mass. App. Ct. 263, 265 (1979). The truncation of the appeal period may have been unreasonable in light of the more-than-two-months' delay between the notice and the razing. But the plaintiff could not have been harmed because she never learned of the notice until after the house had been razed. If, as we do not decide, an unreasonable truncation of the appeal period may be a ground for finding a demolition order invalid, it could not be so found in the circumstances of this case. (2) The judge did not err in excluding from evidence the cancelled checks by which the plaintiff paid her property tax bills and her water bills. Although the 8 Montrose Street address appeared on those checks, there was no showing that the several departments are required to, or do in fact, update

---

[5] The plaintiff's name at the time of all these events was Muriel Ballantine. The change to Muriel Bryant appears to have occurred after 1972.

their records from such checks; and the relevant question was what the personnel of the building department could have discovered by examining the records of those other departments. (3) The procedures followed by the city were not invalidated by its failure to comply with the provisions of G. L. c. 139, § 2, or G. L. c. 143, § 10. The validity of the city's procedures must be tested by reference to the provisions of the building code, St. 1938, c. 479, under which the city purported to act, and which set forth a discrete and self-contained procedure. Compare *New England Trust Co.* v. *Boston*, 300 Mass. at 328-329.

The judgment is reversed. The order allowing the motion for a directed verdict in favor of the city and the defendant Thuma is affirmed. The order allowing the motion for a directed verdict in favor of the defendant Duane Corporation is reversed. The case is remanded for further proceedings in accordance with this opinion.

*So ordered.*