FRANCES CRAFT *vs.* IRVING KANE, executor.[1]

No. 99-P-526.

Essex. December 14, 2000. - May 24, 2001.

Present: BROWN, GILLERMAN, & DUFFLY, JJ.

*Lien. Attorney at Law,* Lien. *Practice, Civil,* Judgment, Stipulation, Dismissal.

Under G. L. c. 221, § 50, an inchoate lien for an attorney's reasonable fees and expenses upon his client's cause of action arose as of the commencement of the action and matured at the time an "order [entered] in his client's favor" as required by the statute: as a result, the attorney's notice of lien was first in time when filed and remained unaffected by the later dismissal of the action upon the agreement of the client and the opposing party. [650-652]

Under Mass.R.Civ.P. 58, as amended, 371 Mass. 908 (1977), a stipulation of dismissal constituted a judgment within the meaning of the attorney's lien statute, G. L. c. 221, § 50, with the result that an attorney's lien that arose prior to the settlement attached to the proceeds arising under the stipulation of dismissal. [652-653]

CIVIL ACTION commenced in the Superior Court Department on October 14, 1993.

A motion to establish and enforce an attorney's lien was heard by *Howard J. Whitehead,* J.

*Russell Homsy* for the plaintiff.

*Irving E. Kane,* pro se (*Philip Harold Cahalin* with him).

GILLERMAN, J. On April 30, 1997, Carlo Cellai, Craft's former attorney, filed a motion to establish and enforce an attorney's lien pursuant to G. L. c. 221, § 50, which we set out below.[2] The motion was briefed, argued and denied. Cellai appealed.

[1]Under the will of William E. Kelly, Jr.

[2]General Laws c. 221, § 50, as appearing in St. 1945, c. 397, § 1, establishes an attorney's lien, providing, in relevant part:

"From the authorized *commencement of an action,* counterclaim or other proceeding in any court . . . the attorney who appears for a client . . . shall have a lien for his reasonable fees and expenses upon his

We summarize the material facts which are undisputed. On January 18, 1993, the house at 143 Bourne Avenue in Somerset (property) owned by William E. Kelly, Jr., was severely damaged by fire. Kelly died as a result of injuries received in the fire. In his will, Kelly devised the property to Frances Craft, who had been living with Kelly. He bequeathed the residue of the estate to another person.

In October of 1993, Cellai, then Craft's counsel, brought an action against Irving Kane, Kelly's executor (executor), alleging that Craft had suffered physical damage and emotional distress (counts I and II) and loss of property (count III) as a result of the negligence of Kelly. The complaint also alleged that the executor had failed to reimburse her for expenses incurred in the repair of the property (count IV), and under the last will and testament of the decedent, Craft sought declaratory relief that she was entitled to the insurance proceeds of $48,732.38 received by the executor (count V). On a date not disclosed in the record, the executor had received a payment of $48,732.38 from Kelly's insurer for the damage to the house and to the personal property therein. Count V of the suit was in response to the position taken by the executor that the insurance proceeds were personalty which passed to the residuary legatee.

On March 18, 1994, Craft moved for partial summary judgment on count V of the complaint; the motion was allowed on June 23, 1994. The judge (first judge), rejecting the executor's position, ruled that the specific devise of Kelly's house to Craft was not adeemed, citing *Walsh* v. *Gillespie*, 338 Mass. 278, 279 (1959). Further, the first judge entered an order that the executor held the fire insurance proceeds in a constructive trust for the benefit of Craft but only to the extent that the proceeds of the policy represented damage to the real estate, not damage to the personal property, and subject also to the extent to which

client's cause of action, counterclaim or claim, upon the judgment, decrees *or other order in his client's favor* entered or made in such proceeding, and upon the proceeds derived therefrom" (emphasis supplied).

the proceeds might be required to pay the debts and expenses of the estate.[3]

A motion for entry of separate and final judgment under Mass.R.Civ.P. 54(b) was denied by a second judge, and proceedings regarding the remaining claims continued. No petition to the single justice session of this court, under G. L. c. 231, § 118, first par., was filed by the executor with regard to the interlocutory order of the first judge establishing the constructive trust for Craft.[4]

Almost three years after the entry of the order establishing the constructive trust of the insurance proceeds for the benefit of Craft, by letter dated April 11, 1997, Craft discharged Cellai. On April 30, 1997, Cellai filed a motion to withdraw and a notice of attorney's lien. On June 10, 1997, the motion to withdraw was allowed.

On October 7, 1997, the case was reported settled. Craft, now represented by successor counsel, apparently was paid $7,500, and a stipulation of dismissal with prejudice was filed on October 14, 1997, and entered on January 2, 1998.[5] The $7,500 settlement was paid by the Massachusetts Insurers Insolvency Fund for Kelly's insurer[6] to settle the entire suit against the estate. The check was made payable to Craft, Cellai, and certain governmental agencies, but the record is silent as to what happened to the check.

A. *Cellai's Claim Against the Fire Insurance Proceeds.*

Cellai contends that he is entitled to a lien against the fire

---

[3]At the hearing on Cellai's motion to establish and enforce his attorney's lien, Cellai agreed (according to the judge's memorandum of decision) that after deducting the portion of the insurance proceeds allocable to personal property, and after payment of the amount due the public adjuster, there remained $23,489.00 subject to the constructive trust.

[4]Of course, the second judge had the power, upon appropriate pleadings, to vacate the interlocutory order of the first judge if he concluded that the order was erroneous. See *Peterson* v. *Hopson*, 306 Mass. 597, 604 (1940).

[5]Neither the order of dismissal nor the stipulation of dismissal appears in the record. The docket, however, indicates that on October 7, 1997, "the case having been·reported settled, it is ordered that the action be and hereby [is] dismissed, to be vacated if an agreement for judgement is filled [*sic*] within 30 days."

[6]Massachusetts Insurers Insolvency Fund paid the claim for Abington Mutual Insurance.

insurance proceeds held by the executor under a constructive trust for Craft.[7] We assume, for the moment, that Cellai is capable of establishing a contractual or quantum meruit basis for recovering his fees, which is a prerequisite to establishing an attorney's lien. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 249 (1993).

We address first the executor's argument that the stipulation of dismissal filed by Craft and the executor terminated the constructive trust of funds in the hands of the executor, leaving no "order . . . in the client's favor," as required by the statute.

There is no merit to the executor's argument. We pointed out in *Cohen* v. *Lindsey*, 38 Mass. App. Ct. 1, 4-5 (1995), that prior to the 1945 amendment, St. 1945, c. 397, § 1, "a statutory attorney's lien existed only after the entry of final judgment in the client's favor." *Cohen* v. *Lindsey, supra*, at 4. After the 1945 amendment, an inchoate lien for an attorney's reasonable fees and expenses upon his client's cause of action arises as of the commencement of an authorized action. See *PGR Mgmt. Co., Inc., Heath Properties* v. *Credle*, 427 Mass. 636, 640 (1998). It becomes *choate*, and attaches to, "any type of court order [subsequently] obtained in a client's favor," *Cohen* v. *Lindsey, supra*, and the "proceeds derived therefrom." G. L. c. 221, § 50. The interlocutory order of the first judge was an order in Cellai's client's favor, with the result that Cellai's inchoate lien (arising upon the filing of the action) became choate, or matured, at the time of the order. See *In re Albert*, 206 B.R. 636, 639 (D. Mass. 1997) ("When an attorney files an action, an inchoate lien arises in the attorney's favor. . . . The lien becomes choate when a judgment, decree, or other order is entered in the client's favor, and attaches to any proceeds derived therefrom.")

Moreover, because Cellai's lien under c. 221, § 50, arose on the commencement of Craft's suit against the executor, and as a result his notice of lien was first in time when filed, it remained unaffected by the later dismissal of the suit, see *PGR Mgmt.*

___

[7]The lien claimed by Cellai is against the fire insurance proceeds and the $7,500 settlement proceeds. This is a "charging lien," distinguished from a "retaining lien" which lies against the client's papers and personal property in the hands of the attorney. See *Phelps Steel, Inc.* v. *Von Deak*, 24 Mass. App. Ct. 592, 592-593 at n.2 (1987).

*Co., Inc., Heath Properties*, 427 Mass. at 640, and attached to whatever amount is finally determined to have been due Craft out of the fire insurance proceeds of $48,732.38, which formed the *res* of the constructive trust. See *Cohen* v. *Lindsey*, 38 Mass. App. Ct. at 5. See also *Smith* v. *Consalvo*, 37 Mass. App. Ct. 192, 194 n.3 (1994) (noting, although not discussing or approving of, counsel's successful motion to establish and enforce an attorney's lien following a settlement reached by successor counsel). See note 3, *supra*.

A contrary result — that the dismissal of the suit upon the agreement of Craft and the executor wiped out Cellai's statutory lien — would violate the policy established by the statute, namely, "protect[ing] attorneys . . . by disabling the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained." *PGR Mgmt. Co.*, 427 Mass. at 640, quoting from *Matter of Heinsheimer*, 214 N.Y. 361, 364 (1915). It was beyond the power of Craft and the executor, by agreement, to nullify Cellai's lien, notice of which had been filed six months prior to the stipulation of dismissal.[8]

B. *Recovery Against Settlement Proceeds of $7,500.*

The docket sheet indicates that this case was disposed of by a stipulation of dismissal. Under Mass.R.Civ.P. 58, as amended, 371 Mass. 908 (1977), a stipulation of dismissal constitutes a judgment. In the context of discussing when a separate document is required for an entry of judgment, Rule 58(a) states, in pertinent part, as follows: "Every judgment shall be set forth on a separate document; but when any party files an agreement for judgment, or a notice *or stipulation of dismissal* pursuant to Rule 41(a)(1), the agreement, notice, *or stipulation* . . . shall,

---

[8]*In re Leading Edge Products, Inc.*, 121 B.R. 128 (D. Mass. 1990), cited by the executor and by the judge, is not apposite. In that case the court explained that "[t]here was no cash exchanged in the context of the settlement, and the litigation was voluntarily dismissed without judgment entering in favor of either party." *Id.* at 129. Thus, there was no "judgment or money decree for payment of expenses incurred and for services rendered by an attorney with respect to the particular action or suit." *Id.* at 130, quoting from *Torphy* v. *Reder*, 357 Mass. 153, 156 (1970). The court concluded that there was nothing to which the statutory lien could attach. *Id.* at 131. Here, however, there is a settlement payment of money that can be attached.

upon being filed, constitute the judgment, for all purposes, and no separate document need be prepared" (emphasis supplied). Because G. L. c. 221, § 50, expressly refers to judgments "entered or made," the stipulation of dismissal constituted a judgment within the meaning of the attorney's lien statute. Cf. *Smith* v. *Consalvo, supra.*

It is undisputed that all of Craft's claims against the executor were settled for $7,500. The filing of the stipulation of dismissal may be taken to mean that the $7,500 was paid to Craft prior to the filing of the stipulation. Nevertheless, the executor, who had notice of Cellai's lien filed six months earlier, paid Craft — if he did — at his peril. In any event, because Cellai's lien arose prior to the settlement, the lien attached to the $7,500 arising under the stipulation of dismissal and now in the hands of the executor, or in the hands of Craft if paid to her.

C. *Determining the Amount of Cellai's Claim.*

The record appendix discloses that Cellai and Craft agreed on a written contingent fee arrangement. See Mass.R.Prof.C. 1.5(b) & (f), 426 Mass. 1315, 1316, 1318 (1998). However, the general rule in Massachusetts is that "a client's discharge of an attorney ends the attorney's right to recover on the contract of employment and, thereafter, an attorney can recover only for the reasonable value of his services on the basis of quantum meruit. . . . [However, a court] might permit an attorney to recover under a contingent fee contract on a showing of substantial performance, bad faith termination by the client, and other factors [described in *Salem Realty Co.* v. *Matera*, 384 Mass. 803, 804 (1981)]." *Opert* v. *Mellios*, 415 Mass. 634, 636-637 (1993). See *Mulhern* v. *Roach*, 398 Mass. 18, 25 (1986). There is no fixed rule, and there is no basis in the record before us to determine whether the discharge of Cellai was in bad faith or for good cause. Upon remand, there must be a thorough exploration of this and other matters identified as relevant in *Salem Realty, supra.*

The judgment is reversed, and the case is remanded to the Superior Court for further proceedings under Cellai's motion to establish and enforce his lien, including a final determination of the amount received by the executor and held by him under a constructive trust, to the extent that such amount constitutes the

net proceeds of the fire insurance applicable to the damage to the real estate exclusive of personal property and such other items which may be a prior claim on the funds held by the executor or for which the executor is responsible. See note 3, *supra.*

*So ordered.*