NORTHEASTERN AVIONICS, INC. *vs*. CITY OF WESTFIELD.

No. 03-P-63.

Hampshire. January 21, 2004. - May 12, 2005.

Present: McHUGH, COHEN, & GREEN, JJ.

*Attorney at Law,* Lien. *Statute,* Construction.

After the plaintiff in an action seeking declaratory relief settled a related action, a Superior Court judge correctly entered an order enforcing an attorney's lien in favor of an attorney who had represented the plaintiff in the declaratory relief action, where the settlement, by conditioning the payment of money to the plaintiff on the plaintiff's withdrawal of its appeal in the declaratory relief action and its voluntary dismissal of the related action, was clearly a settlement of both cases and yielded proceeds to which the statutory lien provision, G. L. c. 221, § 50, applied [512-514]; further, the judge correctly ordered that the attorney's fees covered by the lien were to be deducted from the settlement amount payable to the plaintiff, and not taxed against the party that had been the defendant in both actions [514-515].

CIVIL ACTION commenced in the Superior Court Department on December 21, 1989.

A motion to compel compliance with a court order was heard by *Bertha D. Josephson,* J.

*Mark H. Bluver* for the plaintiff.

*Dorothy Varon* for the defendant.

McHUGH, J. Attorney's liens and their corresponding liabilities gave rise to the dispute that produced the present appeal. A Superior Court judge entered an order enforcing an attorney's lien in favor of Wayne Boylan, an attorney who had represented the plaintiff, Northeastern Avionics, Inc. (Northeastern), in an action seeking declaratory relief, after Northeastern settled a related action. The judge also ordered that fees covered by the lien were to be deducted from the settlement amount payable to Northeastern, not taxed against the city of Westfield (city),

which had been the defendant in both actions. From that order, Northeastern appeals and we affirm.

The essential facts are as follows. Northeastern sells aviation fuel to commercial airlines and private airplane owners. The city operates Barnes Airport, a small airport in Westfield. The airport property includes a "fuel farm" containing, among other things, three underground fuel storage tanks designed to support an aviation fuel distribution business.

In 1981, Northeastern and the city entered into a lease covering a portion of the airport, including the fuel farm. The parties modified the agreement in 1985 by extending the arrangement for thirty years, imposing on the city the responsibility for maintaining the storage tanks, and imposing on Northeastern responsibility for compliance with "all federal, state and local laws or rules and regulations which apply to the use and occupancy of the . . . premises." The lease also provided that, in the event of a dispute, legal fees would be paid by the losing party.

On or before September 13, 1989, the Department of Environmental Protection (DEP) notified the city that the underground tanks required replacement. In turn, the city informed Northeastern that, as of January 1, 1990, Northeastern would have to provide its own fuel storage tanks and could no longer use those in the fuel farm. Northeastern protested, claiming that the city's edict abdicated its contractual responsibility to maintain the storage tanks. The city was unpersuaded by Northeastern's protests and refused to alter its position.

On December 21, 1989, Northeastern filed a complaint against the city requesting a declaratory judgment that, inter alia, the terms of the lease required the city to provide Northeastern with adequate fuel storage capacity, either by allowing Northeastern to use the existing tanks or by providing an alternative form of storage capacity (the first action). Mr. Boylan represented Northeastern in this action.[1] The following April, after a trial on what amounted to an agreed statement of facts, a Superior Court judge found in favor of Northeastern. The city appealed, and on December 23, 1993, this court

---

[1]Attorney William J. Coulter initially represented Northeastern in the case, but he was replaced by Mr. Boylan for the trial.

remanded the case and directed the Superior Court judge to consider certain parol evidence when construing the terms of the lease agreement.

Approximately five years later, before the case was tried on remand, Mr. Boylan filed a notice of withdrawal accompanied by a notice of a lien for attorney's fees for his work on behalf of Northeastern. Mr. Boylan sent copies of the notice to the attorneys of record for both Northeastern and the city.

Northeastern filed a second complaint, dated September 23, 1998, against the city (the second action).[2] The complaint alleged that, as a result of the city's failure to comply with the terms of the lease requiring it to maintain the underground tanks and provide fuel storage capacity, Northeastern was forced out of the fuel business and suffered monetary damages. Mr. Boylan played no role in the initiation or prosecution of Northeastern's second complaint.

On March 23, 1999, about six months after the second action was filed and after a jury-waived trial, a Superior Court judge issued findings of facts and conclusions of law in the first action. Based on the terms of the agreement and parol evidence she considered in accordance with this court's decision, the judge found that the lease required the city to maintain the underground tanks or provide Northeastern with fuel storage capacity. Again, the city appealed.

Thereafter, nothing of consequence occurred in either action until January 10, 2001, when Northeastern and the city entered into a settlement agreement. The agreement stated that, in light of the city's notice of appeal in the first action and its denial of the allegations contained in the complaint in the second action, and because the parties desired "to resolve fully and finally all the matters set forth in" both actions, each agreed to the terms of the settlement agreement.

For present purposes, the significant terms of the settlement agreement were that (1) the city would pay Northeastern $582,800 over a four-year period; (2) the city would withdraw

---

[2]Northeastern initially filed its complaint against Tanknology/NDE Corporation for negligent services rendered during the testing of the tanks. This complaint was amended on September 23, 1998, to instead name the city as the defendant.

its appeal in the first action and Northeastern would file a stipulation of dismissal in the second action; and (3) each party released the other from "any and all manner of actions, causes of action, suits, debts, accounts, contracts, claims, demands, agreements, controversies, judgments, obligations, damages and liabilities" arising out of the lease "or on account of those claims which were, or could have been, asserted in" the first or second actions.

On August 15, 2001, upon learning of the monetary settlement between Northeastern and the city, Mr. Boylan filed in the first action a motion to enforce his lien. A judge of the Superior Court allowed the motion and ordered the city to pay Mr. Boylan fees in the amount of $14,828. Despite the order, the city withheld payment pending resolution of a dispute between itself and Northeastern over whether the attorney's fees were payable from the settlement proceeds.

Eventually, Mr. Boylan filed a motion to compel the city to comply with the court's order for payment. Northeastern filed a "position statement" urging that the mutual releases contained in the settlement agreement precluded the city from paying Mr. Boylan's fees from the settlement proceeds. A judge of the Superior Court disagreed and directed the city to deduct the payment from the proceeds. It is from this order that Northeastern appeals. We think the judge was correct.

The attorney's lien statute, G. L. c. 221, § 50, provides "attorneys [with] a statutory right to assert a charging lien securing compensation for their legal services." *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 244 (1993). The statute provides, in relevant part, as follows:

> "From the authorized commencement of an action, counterclaim or other proceedings in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom."

The statute is designed to ensure payment to an attorney if his

or her "efforts resulted in a fund available to" the client. *Cohen v. Lindsey*, 38 Mass. App. Ct. 1, 5 (1995). See *Sinclair, Louis, Siegel, Heath, Nussbaum & Zavertnik, P.A.* v. *Baucom*, 428 So. 2d 1383, 1384 (Fla. 1983) (holding that a charging "lien is an equitable right to have costs and fees due an attorney for services in the suit secured to him in the judgment or recovery in that particular suit").[3]

Enforcement of a statutory lien requires an attorney to show that (1) an action was commenced, *PGR Mgmt. Co., Heath Properties* v. *Credle*, 427 Mass. 636, 640 (1998); (2) the attorney appeared for the client in that action, *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. at 244, 249; (3) a court entered a judgment, decree, or order in that action, *Craft* v. *Kane*, 51 Mass. App. Ct. 648, 651 (2001); (4) the judgment, decree, or order was favorable to the attorney's client, *Cohen* v. *Lindsey*, 38 Mass. App. Ct. at 4; and (5) proceeds were derived from that judgment, decree, or order. *In re Leading Edge Products, Inc.*, 121 B.R. 128, 131-132 (Bankr. D. Mass. 1990).[4]

It is important to note that, for purposes of G. L. c. 221, § 50, a "judgment" includes a stipulation of dismissal, see *Craft* v. *Kane*, 51 Mass. App. Ct. at 652-653, and "proceeds" encompass monetary settlements. See *ibid.* A lien may, therefore, attach to proceeds derived from a stipulation of dismissal filed pursuant to an agreement to settle a claim in return for the payment of money. See *id.* at 653. In other words, although the stipulation of dismissal is not itself a proceeds-producing order, when the stipulation is filed pursuant to an agreement that yields payment of money, that money is "proceeds" to which G. L. c. 221, § 50, applies.

Applying those principles to the facts of this case, there is no dispute that Northeastern commenced a declaratory judgment action against the city on December 21, 1989, or that Mr. Boy-

---

[3]The statute is also a mechanism by which the Commonwealth increases the number of attorneys willing to serve low-income clients who do not have the means to pay for legal services outright. *PGR Mgmt. Co., Heath Properties* v. *Credle*, 427 Mass. 636, 640 (1998).

[4]These requirements are separate and apart from the threshold question of the attorney's contractual or quantum meruit right to recover the fees, either from his client or pursuant to some other arrangement between the parties. *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. at 249.

lan appeared in that action on Northeastern's behalf. It is also undisputed that the city withdrew its appeal from the judgment adverse to it and that the action in which Mr. Boylan appeared terminated in Northeastern's favor. Northeastern maintains, however, that any "proceeds" yielded by the settlement agreement "derived" from settlement of the second action, not from settlement of the first action, the only one in which Mr. Boylan had appeared. In support of its contention, Northeastern asserts that the first action sought only declaratory relief and such relief, by its very nature, cannot produce "proceeds" to which G. L. c. 221, § 50, applies. Whatever the validity of that argument in other contexts, it is unpersuasive here.

The settlement agreement conditioned the payment it contemplated on withdrawal of the appeal in the first action and voluntary dismissal of the second action. Both actions were essential ingredients of the over-all settlement and, therefore, of the city's obligation to pay Northeastern. It would be the "height of naivete" to conclude that a settlement agreement requiring the dismissal of an action by one party and the withdrawal of an appeal in a different action by the other party was "not a 'package settlement' of both cases." *Kleager* v. *Schaneman*, 212 Neb. 333, 341 (1982). And, if a stipulation of dismissal filed in return for payment of money yields "proceeds" to which a lien may attach, there is no reason why a notice of withdrawal of an appeal likewise filed, alone or as part of a package, in return for a payment of money does not also yield "proceeds" to which the statutory lien provisions also apply.

Northeastern's alternative argument is that, even if the monetary settlement created "proceeds" derived from the first action, the city waived its right to demand that Northeastern pay attorney's fees from those proceeds when it signed the releases the settlement agreement contains. That argument is equally unpersuasive.

First, the lien provided by G. L. c. 221, § 50, attaches to proceeds of a judgment or settlement. The statute does not somehow impose additional obligations on the party or parties who fund the settlement. Beyond that, Northeastern's argument has it backwards. Mr. Boylan appeared in the first action on Northeastern's behalf, and therefore, Northeastern, not the city,

was required to compensate him. To be sure, the lease included a fee-shifting provision requiring the losing party, here the city, to pay Mr. Boylan's legal fees. But the settlement agreement released both sides from all of the obligations they had undertaken in the lease agreement and made no exception designed to preserve the fee-shifting agreement. Therefore, the waiver of consequence is Northeastern's, not the city's. By agreeing to the releases, Northeastern waived its right to demand that the city pay the attorney's fees that otherwise were an obligation of Northeastern alone.

*Order on motion to compel compliance affirmed.*