Craft *v.* Kane.

FRANCES CRAFT *vs.* IRVING KANE, executor.[1]

No. 04-P-1301.

Essex. September 13, 2005. - December 22, 2005.

Present: GREENBERG, KANTROWITZ, & MILLS, JJ.

*Attorney at Law,* Lien. *Executor and Administrator,* Attorney's fees. *Trust,* Constructive trust. *Damages,* Interest.

Where an attorney represented the plaintiff on a contingency basis in an underlying suit against the executor of a homeowner's estate arising from a fire at the relevant home, and a dispute arose over the attorney's fee for legal work done on the case prior to his discharge by the frustrated plaintiff, an attorney's lien attached, under G. L. c. 221, § 50, to the amount due the attorney from the fire insurance proceeds paid to the decedent's residuary legatee — which proceeds formed the res of a constructive trust — when the interlocutory order establishing the constructive trust was issued, notwithstanding the later settlement of the underlying suit for a smaller sum than comprised by the insurance proceeds [325-327]; further, where the contingent fee agreements (under which the attorney represented the plaintiff in the underlying suit) lapsed at the time the attorney was discharged, interest on the attorney's fee only began accruing after the order establishing the amount of his lien was entered [327-328].

CIVIL ACTION commenced in the Superior Court Department on October 14, 1993.

Following review by this court, 51 Mass. App. Ct. 648 (2001), a motion to enforce an attorney's lien was heard by *Elizabeth M. Fahey*, J., and a motion for reconsideration was also heard by her.

*Lauren R. Jacoby* for Carlo Cellai.

*Philip H. Cahalin* for the defendant.

*Frances Craft,* pro se.

GREENBERG, J. For four years (1993 to 1997), during which he represented Frances Craft under two contingent fee agreements,

[1] Under the will of William E. Kelly, Jr.

Attorney Carlo Cellai negotiated and litigated Craft's claims against Irving Kane, as executor of the estate of William E. Kelly, Jr. (executor). The genesis of Craft's claims was the conflagration of the house she shared with Kelly, who died as a result of injuries received in the fire in January of 1993. Kelly died testate, devising the house to Craft and naming Jeanne P. Louizos as the residuary legatee.

Kelly's fire insurer paid the executor $48,732.38 (fire insurance proceeds). In October, 1993, Cellai brought the underlying Superior Court action against Kelly's estate on behalf of Craft, seeking, inter alia, money damages for Craft's injuries sustained during the fire, and declaratory relief that Craft was entitled to the fire insurance proceeds because the specific devise of the house had not been adeemed.[2] On June 23, 1994, a Superior Court judge ordered that the fire insurance proceeds be put in a constructive trust to be held by the executor for Craft's benefit. The case dragged on without resolution until April, 1997, when Craft, now disheartened with the process, discharged Cellai as her attorney. She negotiated a settlement of all her claims against Kelly's estate in the amount of $7,500 (settlement proceeds), which was paid by the Massachusetts Insurers Insolvency Fund (Fund) for Kelly's insurer. The Fund's check was made payable to Craft, as well as to "Comm of Social Services County of Dutchess & Mass. Dept Pub Welfare & Carlo Cellai."[3] After the check was issued, a stipulation of dismissal with prejudice was filed in the Superior Court on October 14, 1997, and the case dismissed on January 2, 1998.

As might be predicted, a dispute arose over Cellai's legal fee for work done on the case prior to his discharge. Upon Cellai's motion to establish and enforce an attorney's lien pursuant to G. L. c. 221, § 50,[4] a second Superior Court judge denied him relief, holding that the constructive trust had been dissolved by

---

[2]The executor took the position that the fire insurance proceeds were personalty and should pass to Kelly's residuary legatee, not to Craft.

[3]The Fund's check has never been cashed, and at oral argument neither party could account for its whereabouts.

[4]General Laws c. 221, § 50, as appearing in St. 1945, c. 397, § 1, provides in relevant part:

> "From the authorized commencement of an action, counterclaim or other proceeding in any court, . . . the attorney who appears for a cli-

the settlement and that the settlement proceeds did not fall within the statute. Cellai appealed, and on May 24, 2001, this court held that under the attorney's lien statute, an inchoate lien for attorney's fees and expenses arose as of the commencement of the underlying action in October, 1993, and matured on June 23, 1994, when a Superior Court judge entered an interlocutory order, ordering the executor to hold the fire insurance proceeds in a constructive trust until the amount due to Craft could be determined. *Craft* v. *Kane*, 51 Mass. App. Ct. 648, 650-652 (2001) (*Craft I*). We remanded the case "to the Superior Court for further proceedings under Cellai's motion to establish and enforce his lien, including a final determination of the amount received by the executor and held by him under a constructive trust, to the extent that such amount constitutes the net proceeds of the fire insurance applicable to the damage to the real estate." *Id.* at 653-654.

On remand, another Superior Court judge (remand judge) conducted a nonevidentiary hearing on the particular issues. She ruled that Craft was entitled to a payment of $14,489.03 from the constructive trust of the fire insurance proceeds to which Cellai's lien could attach. To this, she added the $7,500 settlement proceeds for a total covered by the lien of $21,989.03. She also determined that Cellai was entitled to interest on this amount from December 22, 1997, the date on which the executor violated the interlocutory order establishing the constructive trust by disbursing all of the fire insurance proceeds to Kelly's residuary legatee. Subsequent to a further hearing occasioned by the executor's motion for reconsideration, she vacated part of her original ruling and ordered that "Cellai's lien is limited to the amount recovered in good faith by [Craft], that his lien is limited to $7,500 which has already been paid to him and which hopefully he can have the [Fund] reissue its [check] to him if in fact, he has lost that check."

Cellai raises a plethora of issues, only two of which are

ent . . . shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom."

pertinent to resolving this second appeal: (1) a determination of the total amount of money held in the constructive trust by the executor and subject to Cellai's lien; and (2) whether Cellai is entitled to interest on the amount to which the lien attaches and, if so, from what date.

1. *Assessment of the attorney's fees under the lien.* After we remanded the case in *Craft I* for further proceedings on the attorney's lien issues, additional written materials, including correspondence between Craft and Cellai, became part of the record. The remand judge found that Craft's discharge of Cellai was not done in bad faith or motivated by any of the other factors described in *Salem Realty Co.* v. *Matera*, 384 Mass. 803, 804 (1981). Rather, the record reflects that Craft was frustrated by the lengthy litigation process and had lost patience with the whole case. The remand judge found that Craft's letter discharging Cellai was "thoughtful and reflects a decision-making process that had taken her several months." As a result, the remand judge correctly applied the general rule in Massachusetts that a "client's discharge of an attorney ends the attorney's right to recover on the contract of employment and, thereafter, an attorney can recover only for the reasonable value of his services on the basis of quantum meruit." *Opert* v. *Mellios*, 415 Mass. 634, 636 (1993). Cellai has no quarrel with this aspect of the remand judge's decision.

In determining the reasonableness of the fee and costs, the remand judge did not consider the usual factors such as the dollar value of the case, the value of the services, the fees usually charged, time spent, and the success achieved, see *Phelps Steel, Inc.* v. *Von Deak*, 24 Mass. App. Ct. 592, 595 (1987), because Cellai's total bill exceeded the "amount" covered by the lien. With respect to that amount, she found as follows: Of the total payment of $48,732.38 from Kelly's fire insurer for the damage to the house and to the personal property within, $26,115.97 was for damage to the house and thus payable to Craft. From that figure, she deducted $2,626.94, which represented Craft's pro rata share of the fire adjuster's fee. She also deducted $9,000 paid by the estate to the town of Somerset to discharge a lien for nonpayment of taxes, and then added the $7,500 settlement received by Craft. As a result, in her initial order, she found that

there remained a net amount of $21,989.03 to which Cellai's lien could attach.[5] Acting on the executor's motion for reconsideration, she limited, we think erroneously, Cellai's lien to the $7,500 settlement that Craft had received from the Fund.

The core issue argued by Cellai is that the remand judge was initially correct in enforcing the lien against both the fire insurance proceeds and the settlement proceeds, and that she should not have revoked her original order and limited the amount of the lien to $7,500. The executor takes the position that the remand judge properly applied the principles articulated in *Craft I* and that Cellai's lien covers only the $7,500 payment because Craft settled all of her claims for that amount.

We start with the proposition that Cellai's lien arose at the commencement of Craft's suit against Kelly's estate and remained in effect despite Craft's later discharge of Cellai and her settlement of the suit. In *Craft I*, 51 Mass. App. Ct. at 650-652, we concluded that the lien attached to the fire insurance proceeds because a constructive trust was established when Craft, with Cellai as her attorney, convinced a Superior Court judge that the specific devise of Kelly's house to her was not adeemed by the fire.

The executor argues that we allowed the attorney's lien to attach to the constructive trust amount only because there was confusion as to what happened to the $7,500 settlement draft.[6] The executor misconstrues our opinion in *Craft I*. There, we analyzed Cellai's claims against the fire insurance proceeds held in a constructive trust and the settlement proceeds as distinct aspects of the same lien. See *id.* at 650, 652. As we stated in *Craft I*, "Cellai's lien under [G. L.] c. 221, § 50, . . .

_____

[5]Cellai argues for the first time that the remand judge acted impermissibly when she deducted the $9,000 paid to the town of Somerset for unpaid taxes and the $2,626.94 fire adjuster's fee. The point was lost when not raised on the first appeal or during the subsequent remand hearing. See *Gram* v. *Liberty Mut. Ins. Co.*, 391 Mass. 333, 335 (1984).

[6]In *Craft I*, 51 Mass. App. Ct. at 650, we stated that "the record is silent as to what happened to the check." The parties agree that Craft received the check for $7,500, endorsed it, and sent it to Cellai. It is also agreed that Cellai no longer has the check, and that it has not been cashed. See note 3, *supra*. The executor argues that "[a]ny confusion about the holding in [*Craft I*], however, was created by Cellai's deliberate failure to inform the court and [the executor] that he had received the $7,500 settlement payment."

remained unaffected by the later dismissal of the suit . . . and attached to whatever amount is finally determined to have been due Craft out of the fire insurance proceeds of $48,732.38, which formed the res of the constructive trust." *Id.* at 651-652. We did not allow the lien to attach to the constructive trust merely because we were unsure of the fate of the $7,500 check. The lien attached under G. L. c. 221, § 50, when the order establishing the constructive trust was issued.

2. *Computation of interest.* The remand judge ruled that the executor's payment of the fire insurance proceeds to the residuary legatee on December 22, 1997, constituted a breach of the interlocutory order establishing the constructive trust. As a result, she determined that interest accrued on Cellai's lien from that date. We do not agree.

The relevant statute, G. L. c. 231, § 6C, as amended through St. 1993, c. 110, § 224, states, in pertinent part:

> "In all actions based on contractual obligations, upon a verdict, finding or *order for judgment* for pecuniary damages, interest shall be added . . . . If the date of the breach or demand is not established, interest shall be added by the clerk of the court . . . from the date of the commencement of the action . . . ." (Emphasis added.)

This case presents a unique set of circumstances, unlike a standard breach of contract case in which parties must conform their conduct to terms of their written or oral agreement. Here, the remand judge correctly ruled that the original contingent fee agreements between Cellai and Craft lapsed when Craft chose, in good faith, to discharge Cellai as her attorney. There ceased to be any agreements concerning the payment of Cellai's fee, and, as we have concluded, he can recover only the reasonable value of his services on the basis of quantum meruit. In essence, there were no longer any agreements to "breach." It is equally illusive to search the record for a "demand" because Cellai's notice of lien remained unaffected by the later dismissal of the suit. See *PGR Mgmt. Co. Inc., Heath Properties* v. *Credle*, 427 Mass. 636, 640 (1998). See also *Smith* v. *Consalvo*, 37 Mass. App. Ct. 192, 194 n.3 (1994) (noting, although not discussing or approving of, counsel's successful motion, following a settlement reached by successor counsel, to have succes-

sor counsel deposit an amount "[based on (counsel's) original application for an attorney's lien from the settlement in an interest bearing escrow account, pending further order of the court"]).

In *Sterilite Corp.* v. *Continental Cas. Co.*, 397 Mass. 837 (1986), the Supreme Judicial Court interpreted G. L. c. 231, § 6C, the statute with special attention to this dilemma. There, the court noted that the primary purpose of the statute was to "compensate a damaged party for the loss of use or unlawful detention of money." *Id.* at 841, quoting from *Perkins Sch. for the Blind* v. *Rate Setting Commn.*, 383 Mass. 825, 835 (1981). "An award of interest is made" to make the wronged party whole and should not "result in a windfall for plaintiffs amounting, in essence, to an award of punitive damages." *Ibid.* In this case, to implement the purpose of the statute, we conclude that it was only after the remand judge entered her initial order on April 28, 2004, establishing the amount of the lien, that Cellai was lawfully entitled to his legal fee. Until that time, he was not deprived of the use of his money because the amount of the lien remained an unsettled question.[7]

The order on the executor's motion for reconsideration is vacated. The judgment on Cellai's motion to enforce attorney's lien is modified to award interest only from April 28, 2004, and as so modified, is to stand.

*So ordered.*

---

[7]The executor's request for attorney's fees and double costs associated with this appeal is denied.