# United States Court of Appeals
## For the First Circuit

No. 13-1476

SANTANDER BANK, N.A.,

Plaintiff, Appellee,

v.

CAMILLA J. WARRENDER,

Defendant, Appellee,

VALERIANO DIVIACCHI,

Interested Party, Appellant.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Denise J. Casper, U.S. District Judge]

Before

Selya, Stahl and Lipez,
Circuit Judges.

Valeriano Diviacchi, appearing pro se.
Howard M. Brown, with whom Richard E. Gentilli, Sarah A. Smegal, and Bartlett Hackett Feinberg P.C. were on brief, for appellee Santander Bank, N.A.
Nancy Sue Keller, with whom Harold Jacobi, III and Jacobi and Chamberlain LLP were on brief, for appellee Camilla J. Warrender.

July 29, 2014

**LIPEZ, Circuit Judge**.  This is an appeal from the district court's denial of a motion to enforce an attorney's lien in an underlying mortgage dispute.  Attorney Valeriano Diviacchi was one of several lawyers representing defendant Camilla Warrender in an action brought against her by her mortgagee, Sovereign Bank.[1] Shortly after Diviacchi entered his appearance, Warrender, without Diviacchi's assistance, was able to find a third-party purchaser for her property and negotiate with Sovereign Bank for the dismissal of its claims against her.  Prior to the completion of the settlement, Diviacchi filed a notice of attorney's lien pursuant to Massachusetts General Laws chapter 221, section 50 ("section 50").  The sale of the property went smoothly and Sovereign Bank dismissed its claims against Warrender.  Diviacchi nonetheless moved for enforcement of his lien against funds derived from the sale of the property.  The district court denied his motion.  We affirm that decision.

**I.**

In June 2011, Sovereign Bank commenced this action in the District of Massachusetts against Warrender to collect on a $2.5 million loan that was secured by property on Nantucket.[2]  On May 1,

---

[1] The appellee, Santander Bank, N.A., operated under the name "Sovereign Bank, N.A." during the events at issue here and so we refer to it throughout by that former name.  The bank's name was changed in 2013 and, pursuant to our order of November 13, 2013, the caption of the case was amended to reflect that change in name.

[2] Federal jurisdiction is based on diversity of citizenship pursuant to 28 U.S.C. § 1332.  At the time of filing, plaintiff

2012, Warrender hired Diviacchi to represent her. The fee arrangement provided for Diviacchi to receive either a contingent fee (calculated as a percentage of the gross amount collected from her counterclaim, if any) or a flat, nonrefundable fee of $25,000 ($15,000 of which was paid upfront). One week after he was retained, Diviacchi entered his appearance and filed an amended counterclaim against Sovereign Bank. Sovereign Bank filed a motion to dismiss the counterclaim on May 17.

Shortly after entering his appearance, Diviacchi briefly left the state to attend his daughter's college graduation. He requested, and was partially granted, a stay of proceedings for thirty days. That stay applied to any scheduling and response deadlines, but the court held that the non-judicial foreclosure of Warrender's property, scheduled for May 24, could proceed regardless of Diviacchi's availability.[3] As a result, Warrender hired attorneys from the law firm of Jacobi & Chamberlain LLP, who entered a limited appearance for the purpose of "filing Defendant's Emergency Motion For A Temporary Restraining Order And Motion For Preliminary Injunction in the above-captioned action while

_____

Sovereign Bank, N.A. was a federal savings bank with its headquarters and principal place of business in Pennsylvania; defendant Warrender was a citizen of Massachusetts.

[3] Under Massachusetts law, a court action is generally not necessary to effectuate a foreclosure. When the loan is in default, provided the mortgage documents include the usual power of sale provision, the law permits the mortgagee to conduct a foreclosure by sale. See Mass. Gen. Laws ch. 244, § 14. The law does require notice before such a foreclosure sale. Id.

defendant and plaintiff-in-counter-claim awaits the return of her new counsel from vacation." After oral argument on May 22, the court denied the motion, thereby declining to enjoin the foreclosure sale of Warrender's property. Jacobi & Chamberlain LLP represented Warrender in an interlocutory appeal of that decision. We ordered the parties to participate in mediation.[4]

On June 6, Warrender notified Diviacchi by email that she had received an offer for the property from a third party and Sovereign Bank was offering to settle the case pursuant to the short sale[5] and forgive the loan. Diviacchi responded, telling Warrender that if she were to settle, she would still owe him the $10,000 balance on the flat fee. Meanwhile, on June 14, Diviacchi filed an opposition to Sovereign Bank's motion to dismiss the counterclaim.

In July, due to Warrender's alleged refusal to pay the remaining portion of the flat fee in accordance with the fee agreement, Diviacchi filed a notice of attorney's lien in the action in accordance with section 50. Three days after the lien was filed, as a result of the court-ordered mediation, Warrender

---

[4] The appeal was not decided before the settlement described herein was reached and was therefore voluntarily dismissed pursuant to Federal Rule of Appellate Procedure 42(b).

[5] A short sale is a sale of real property for less than the total amount owed on a loan secured by that real property that nonetheless, by agreement, generally releases the property from the encumbrance. See Daniel F. Hinkel, Practical Real Estate Law 167 (7th ed. 2014).

and Sovereign Bank agreed to a settlement pursuant to a stipulation (allegedly unbeknownst to Diviacchi) that Warrender's property be sold for $2.24 million to a third party. Sovereign Bank agreed to forgive the loan and waive its right to a deficiency judgment in exchange for $1.9 million of the proceeds from the short sale. The remaining proceeds were left to Warrender ($340,000 in total). Of the $340,000, after other debts were paid in order to transfer clear title (including the debts accrued by the hiring of Jacobi & Chamberlain LLP), Warrender had over $175,000 remaining. Only the attorneys of Jacobi & Chamberlain LLP signed the stipulation on behalf of Warrender. On September 6, 2012, one day after the sale of the property, a stipulation of dismissal was submitted to the court (also allegedly unbeknownst to Diviacchi).[6]

Diviacchi then filed a Motion to Enforce Attorney's Lien Against All Parties, seeking almost $100,000 in accordance with the contingency fee provision (i.e., one-third of the $340,000 minus the $15,000 paid on the flat fee). In April 2013, the district court denied the motion to enforce the lien, holding that it failed to comply with section 50. In May 2013, the court denied Diviacchi's motion for reconsideration. This appeal from Diviacchi followed. We review de novo the district court's determination that the attorney's lien was not enforceable under section 50. See

---

[6] Diviacchi claims that he did not learn of the events that occurred between the time he filed his lien and the filing of the stipulation of dismissal until September 21.

Gargano v. Liberty Int'l Underwriters, 572 F.3d 45, 49 (1st Cir. 2009) ("[W]e review de novo the district court's interpretation of state law.").

**II.**

Section 50 provides, in pertinent part:

> From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom.

The district court concluded that Diviacchi was not entitled to enforcement of his lien pursuant to that statute. Initially, the court concluded that there was no judgment in favor of Warrender. In the alternative, the court held that Diviacchi "failed to make a showing that he incurred reasonable fees and expenses here." After reconsideration, the court added, without reversing its prior decision, that even if the stipulation of dismissal constituted a judgment, it did not result in "proceeds" being paid on Warrender's counterclaim.

Thus, the district court's holding had three components. First, the court concluded that the settlement reached in this case did not constitute a "judgment, decree or other order in [Warrender's] favor" within the meaning of section 50. Second, the

-6-

court concluded that Warrender received no "proceeds" upon which a lien could attach. Id. Third, the court concluded that the fees requested were not shown to be reasonable. We address each of these conclusions in turn.

Massachusetts courts have consistently held that "for purposes of [Mass. Gen. Laws ch. 221, § 50], a 'judgment' includes a stipulation of dismissal." Ne. Avionics, Inc. v. City of Westfield, 827 N.E.2d 721, 725 (Mass. App. Ct. 2005); see also Craft v. Kane, 747 N.E.2d 748, 752 (Mass. App. Ct. 2001) ("[T]he stipulation of dismissal constituted a judgment within the meaning of the attorney's lien statute."). Here, it is undisputed that the parties agreed to a settlement whereby Sovereign Bank would forgive Warrender's debt and waive its right to a deficiency judgment against her in exchange for a cash payment derived from the short sale of the property. Because the result of that settlement was the dismissal of claims against Warrender, the stipulation of dismissal could fairly be interpreted as a judgment in her favor. See, e.g., Ne. Avionics, 827 N.E.2d at 725-26. Accordingly, Diviacchi is correct in his assertion that the stipulation of dismissal here could have provided the basis for an attorney's lien.

The problem, however, is that an attorney's lien must attach to something. In other words, there must be "'proceeds derived' from a 'cause of action' as a result of a settlement." Ropes & Gray LLP v. Jalbert, 910 N.E.2d 339 n.12 (Mass. 2009); see

-7-

also Curly Customs, Inc. v. Pioneer Fin., 814 N.E.2d 1176, 1179 (Mass. App. Ct. 2004) ("[I]f there are no such proceeds, there is no lien." (citing Torphy v. Reder, 257 N.E.2d 435, 437-38 (Mass. 1970)). Here, the sale of Warrender's property, which was a condition of the settlement, did generate money that she then used to pay her indebtedness to Sovereign Bank and other creditors. Importantly, these funds did not come from the counterclaim defendant -- Sovereign Bank -- but rather from a third party in a transaction that was effectuated outside the context of the litigation. Furthermore, the relevant cause of action from which proceeds had to derive was her counterclaim, which was simply dismissed as part of the settlement.

The district court found that the settlement itself generated no "proceeds" for Warrender; neither the dismissal of her counterclaim nor the dismissal of the bank's claims against her required any payment to her, and any money she may have acquired came from the sale of her property to a third party. Accord In re Leading Edge Prods., Inc., Civ. A. No. 90-13112-Z, 1991 WL 97459, at *1 (D. Mass. May 28, 1991) ("[The attorney's client] received no cash or cash equivalent as the result of the settlement. Rather, the benefit derived from the elimination of [creditor's] claim was merely the elimination of [the client's] debt to this creditor . . . . No case in Massachusetts recognizes such a benefit as attachable proceeds under the charging lien statute . . . ."). As in Leading Edge, the benefit Warrender derived from the stipulation

of dismissal was the ability to sell her own property and eliminate her indebtedness to Sovereign Bank (i.e., the bank's claim against her). Thus, any funds that went to satisfy Warrender's debt were not "proceeds" of her counterclaim.

Diviacchi argues that because the sale price of the property exceeded the amount Warrender paid to Sovereign Bank, she experienced a windfall.[7] In an attempt to characterize that windfall as "proceeds" of her counterclaim, he then likens the sale of Warrender's home to the sale of patents and patent applications, which the Supreme Judicial Court of Massachusetts found to generate attachable "proceeds" in Ropes & Gray. 910 N.E.2d at 338 ("[T]he attorney's lien also attaches to the proceeds from the sale of [patents and patent applications]."). There, however, the court focused on the peculiarities of patent litigation and an attorney's role in securing the monetary benefits of a valid patent. The court noted that "[a] patent attorney who successfully secures a patent for his client in proceedings before the USPTO is entitled to the same protection under [section 50] as an attorney who obtains a favorable judgment for his client in court." Id. at 339 (emphasis added). The court also remarked that "the clear intent

---

[7] But cf. Goldstein, Goldman, Kessler & Underberg v. 4000 E. River Rd. Assocs., 64 A.D.2d 484, 488 (N.Y. App. Div. 1978)(per curiam) (holding that although the attorney successfully argued for a reduction in the tax assessment of his client's property, producing "a measurable saving of taxes for three tax years," the savings were not proceeds subject to a lien within the meaning of New York's attorney's lien statute).

-9-

of the Legislature in enacting [section 50] was to provide protection to the unpaid attorney, and in the context of patent prosecution work, this intent would be wholly frustrated if the lien did not attach to the proceeds derived from the sale of the patent or patent application." Id. at 338.

This logic does not apply to the funds generated by the sale of Warrender's property. Diviacchi did not "successfully secure[]" the value that Warrender realized by selling her home. Id. at 339. Unlike a patent, whose monetary value is linked to the efforts of the attorney in securing appropriate recognition of its validity, real property has value independent of the efforts of any attorney. In other words, one situation involves created value, the other intrinsic value. Warrender's home was worth $2.24 million regardless of whether Diviacchi did any work. Moreover, by his own admission, Diviacchi had virtually no involvement in the short sale or settlement process. Hence, we agree with the district court that Diviacchi is not entitled to enforcement of his attorney's lien against the proceeds of the sale of Warrender's property. Accord Johnston v. First Fed. Sav. Bank, 822 N.E.2d 614, 616 (Ind. Ct. App. 2005) (remarking that under Indiana law "an attorney would be entitled to a lien only upon property recovered for a client"); Snitow v. Jackson, 158 N.Y.S.2d 304, 306 (N.Y. Sup. Ct. 1956) ("The real property against which the petitioners seek a lien was not itself recovered or awarded to the respondent by the order dismissing the proceeding to validate the mortgage against

-10-

such property, and the petitioners may not be given a lien against the same.").

As noted, the district court also held that the equities would not have entitled Diviacchi to enforcement of the lien even if he legally met the requirements of section 50. Specifically, the court held that Diviacchi "failed to make a showing that he incurred reasonable fees and expenses here. . . . [H]is sole contributions were the filing of an amended counterclaim and opposition to the Bank's motion to dismiss that amended pleading. The scope and brevity of his representation here do not lend particular credence to his unsubstantiated claim that he expended 'at least 60 hours on this Action.'" Because we find that Diviacchi's lien is not legally enforceable against the sale proceeds, we need not reach the equitable issue of the reasonableness of his requested fees.[8]

**Affirmed.**

---

[8] We note that nothing in our decision precludes Diviacchi from commencing independent litigation seeking payment for his services pursuant to his contract with Warrender. Accord Bistany v. PNC Bank, NA, 585 F. Supp. 2d 179, 185 (D. Mass. 2008) ("[The unpaid attorney's] remedy cannot, therefore, lie in the enforcement of a lien for attorneys' fees. Rather, he may sue [the clients] to recover any fees they rightfully owe him." (citing Torphy, 257 N.E.2d at 436, 438)); Zabin v. Picciotto, 896 N.E.2d 937, 949 n.17 (Mass. App. Ct. 2008) ("[T]he lien furnishes merely a basis to secure a claim, rather than the basis for the claim itself. With or without a lien, the attorneys [may be] entitled to claim and recover the amounts due to them for their respective services.").