NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-1256

CITY OF BEVERLY

vs.

BASS RIVER GOLF MANAGEMENT, INC., & another.[1]

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

Defense attorney, Denis Sullivan (Attorney Sullivan), appeals from a Superior Court judge's denial of his motion to enforce an attorney's lien against the plaintiff, the City of Beverly (Beverly). Although Beverly received a judgment against the defendant, Bass River Golf Management, Inc. (Bass River), it never received any proceeds from the defendant. Because of this, the judge denied Attorney Sullivan's motion to enforce the execution issued against Beverley, as defendant in counterclaim, to satisfy his attorney's lien. We affirm.

_____
[1] 31 Tozer Road, LLC.

Background.[2]  In March 2011, Beverly filed suit against Bass River and 31 Tozer Road, LLC (Tozer), the guarantor of Bass River's payment obligations, asserting breach of contract claims.  Attorney Sullivan filed an appearance to represent Bass River and subsequently filed an answer and counterclaim on Bass River's behalf.  The counterclaim asserted, among other things, breach of the covenant of good faith and fair dealing and violations of G. L. c. 93A (Chapter 93A).  Following a jury trial in June 2013, the jury found that Beverly was entitled to damages in the amount of $631,969.63 for Bass River's breach.  The jury also determined that Beverly violated its covenant of good faith and fair dealing and awarded Bass River $48,967.33.  Judgment entered for Beverly on Bass River's counterclaim for violation of Chapter 93A.

In October 2014, the Superior Court judge issued amended final judgments.[3]  Attorney Sullivan filed a notice of appeal on behalf of Bass River and Tozer.  Prior to this court resolving that appeal, Attorney Sullivan, in March 2017, filed a notice of attorney's lien for his fees and expenses for services rendered

---

[2] The facts of the underlying claims, many of which are not relevant to the appeal before us, can be found at Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595 (2018).

[3] The judgment against Tozer was later amended to $600,000 in accordance with Bass River and Tozer's guaranty agreement.

to Bass River.[4]  The lien was placed "upon any and all proceeds that may be recovered by [Bass River] whether by a judgment or settlement of any claim, counterclaim, cause of action, judgment, execution, order or decree in the matter" against Beverly.  In January 2018, this court affirmed the judgment entered in favor of Beverly against Bass River.  See Beverly v. Bass River Golf Mgt., Inc., 92 Mass. App. Ct. 595, 599, 606 (2018).[5]

In October 2020, Attorney Sullivan filed a motion to establish the amount of his attorney's lien in accordance with G. L. c. 221, § 50.  He claimed outstanding fees in the amount of $67,556.73 for his services in defending Bass River against Beverly and in prosecuting Bass River's counterclaim.[6]  A judge of the Superior Court allowed his motion in part and denied it in part, ordering an attorney's lien for Attorney Sullivan in the amount of $19,922.[7]

---

[4] Attorney Sullivan, charging an hourly rate of $250.00, asserted fees and costs totaling $127,046.74.

[5]  The Supreme Judicial Court denied further appellate review.  See Beverly v. Bass River Golf Mgt., Inc., 479 Mass. 1101 (2018).

[6] Attorney Sullivan's itemized time and expenses list originally requested attorney's fees in the amount of $127,046.74.  This amount was later reduced to $67,556.73 after Bass River was credited $59,490.01.

[7] The judge reasoned that the amount of $47,634.73, which was billed in connection with Bass River's unsuccessful appeal,

3

In response, Attorney Sullivan filed a motion to enforce his attorney's lien against the execution to be issued against Beverly. Specifically, he requested that the court order Beverly to pay him $19,922, "the amount of his attorney's lien with accrued interest . . . out of the amount [the City] owes under the execution to be issued to [Bass River]." A Superior Court judge denied Attorney Sullivan's motion. The judge reasoned that, indeed, Attorney Sullivan "is entitled to his legal fees," emphasizing that "those fees are owed by his client."[8] The judge explained that Attorney Sullivan is not entitled to payment from Beverly simply because his lien cannot be set off against a judgment for Beverly.[9] The judge continued, "compelling Beverly to pay Attorney Sullivan the $19,922.00 owed by his client would lead to an absurd result and tortured interpretation of the [attorney's lien] statute." Furthermore, the judge emphasized that there are "no escrowed funds," "no proceeds," and thus, "no money" from which the attorney's lien

---

should be subtracted from the fees Attorney Sullivan was seeking.

[8] We need not discuss the validity or priority status of Attorney Sullivan's lien because it is undisputed by the parties that his lien has priority to any later accruing judgments pursuant to G. L. c. 221, § 50.

[9] See G. L. c. 235, § 27 (set off prohibited as to portion of the execution upon which the attorney has a valid lien pursuant to G. L. c. 221, § 50).

4

could be compelled.  In other words, enforcing Attorney Sullivan's lien would compel Beverly to pay Bass River's legal fees, when Attorney Sullivan represented Bass River.  Attorney Sullivan appealed.[10]

Discussion.  This case presents a question of statutory construction, which we review de novo.  See Conservation Comm'n of Norton v. Pesa, 488 Mass. 325, 331 (2021).  In interpreting a statute, we strive to "effectuate the intent of the Legislature" (quotation and citation omitted).  Id.

The attorney's lien statute "was designed to protect, as a matter of public policy, an attorney's right to compensation for the rendering of legal services."  Ropes & Gray LLP v. Jalbert, 454 Mass. 407, 413 (2009).  It serves to protect attorneys "against the knavery of their clients, by disabling the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained."  Ropes and Gray LLP, supra, citing Boswell v. Zephyr Lines, Inc., 414 Mass. 241, 248 (1993)).  The statute shall "be interpreted according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the

---

[10] After this appeal had been filed, but before oral argument, Beverly filed for supplementary process pursuant to G. L. c. 224, § 14.  As a result, the judge concluded: "Judgment debtor [Bass River] found, under examination under oath, to be currently unable to pay on judgment."

5

language" (quotation and citation omitted).  Ropes and Gray LLP, supra, at 412.  We must give effect to every word of the statute.  Id. at 414.

The attorney's lien statute states,

> "From the authorized commencement of an action, counterclaim or other proceeding in any court, . . . the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor entered or made in such proceeding, and upon the proceeds derived therefrom."

G. L. c. 221, § 50.  The attorney's lien statute allows for "three separate and independent bases for the assertion of an attorney's lien," which include "(1) upon [the] client's cause of action, counterclaim or claim, (2) upon the judgment, decree or other order in [the] client's favor entered or made in such proceeding, and (3) upon the proceeds derived therefrom."  Ropes & Gray LLP, 454 Mass. at 414.  Attorney Sullivan claims that the Superior Court judge erred in concluding that his lien could only be satisfied from proceeds.[11]  He asserts that his

---

[11] Beverly asserts that Attorney Sullivan's argument regarding proceeds is waived because it was not asserted in Superior Court.  We are satisfied that Attorney Sullivan raised essentially this same argument for the enforcement of the attorney's lien in his motion before the Superior Court.  His argument is therefore not waived.

Beverly further asserts that Attorney Sullivan's argument is barred under the doctrine of sovereign immunity.  We need not reach this issue because Beverly waived the immunity argument by

6

attorney's lien can attach "to any or all of the three bases specified."

"[T]he plain language of [the attorney's lien statute] reinforces [the] conclusion that 'proceeds' relate[s] to both 'any claim, counterclaim, [or] cause of action,' and to any 'judgment, execution, order or decree.'" Ropes & Gray LLP, 454 Mass. at 416 n.10. In other words, "the statute . . . includes any type of court order obtained in a client's favor." Cohen v. Lindsey, 38 Mass. App. Ct. 1, 4 (1995). For example, it is appropriate for an attorney's lien to be paid from an attorney's efforts resulting in funds available to satisfy his client's liability to a defendant. See id. at 5.

Accordingly, the plain meaning of the statute compels us to conclude that "[a]n attorney's lien must attach to something" (emphasis added). Santander Bank, N.A. v. Warrender, 760 F.3d 130, 133 (1st Cir. 2014). See Black's Law Dictionary (12th ed. 2024) (defining "proceeds" as "(1) [t]he value of land, goods, or investments when converted into money; the amount of money received from a sale . . . (2) [s]omething received upon selling, exchanging, collecting, or otherwise disposing of collateral" [emphasis added]). For instance, in Santander Bank,

---

failing to plead the affirmative defense in its Answer to Bass River's counterclaim. See Mass. R. Civ. P. 8 (c), 365 Mass. 751 (1974); see also Bryant v. Boston, 11 Mass. App. Ct. 450, 453 n.3 (1981).

7

N.A., supra, the United States Court of Appeals for the First Circuit reasoned that an attorney's lien required "proceeds derived from a cause of action as a result of a settlement" (quotations and citation omitted).[12]  See Kourouvacilis v. American Fed'n of State, County and Mun. Employees, 65 Mass. App. Ct. 521, 521 n.1 (2006) (reasoning that if an attorney's lien were enforceable, it would be to the extent the client "received any proceeds derived from her cause of action as a result of the settlement" [quotations omitted]).

"[N]o lien exists in general with respect to amounts that may be owed by the client pursuant to the contract with the attorney."  Curly Customs, Inc. v. Pioneer Financial, 62 Mass. App. Ct. 92, 97 (2004).  "Rather, the lien exists only on proceeds obtained by the client in the underlying proceeding; consequently, if there are no such proceeds, there is no lien."  Id.  See Ropes & Gray LLP, 454 Mass. at 416 ("actual payment for the provision of legal services . . . occurs when there are 'proceeds' of a claim or judgment from which to make such payment"); In re Leading Edge Products, Inc., U.S. Dist. Ct., No. 90-13112-Z (D. Mass. May 28, 1991) (recognizing proceeds as

---

[12] We note there is a similar construction for liens in the commercial context.  See Ropes & Gray LLP, 454 Mass. at 417 (security interests attaching to identifiable proceeds of collateral).

8

"cash or a cash equivalent" and not merely as the benefit of the elimination of a claim).

Here, Beverly has yet to receive any payment from Bass River for the judgment in its favor. Nor has Beverly paid Bass River for the counterclaim judgement. Notably, because Beverly is owed more than Bass River, the judgments -- excluding the amount of the attorney's lien -- may be set off against the other. See PGR Mgt. Co. v. Credle, 427 Mass. 636, 641 (1998); see also G. L. c. 235, § 27. Accordingly, Beverly does not owe Bass River anything.

Where, as here, Bass River has not paid anything towards the judgment owed to Beverly, there are no funds available from which Attorney Sullivan's attorney's lien can attach.[13] See e.g., PGR Mgt. Co., 427 Mass. at 641 (attorney's lien attaching to funds held in escrow); Craft v. Kane, 51 Mass. App. Ct. 648, 653 (2001) (attorney's lien attaching to a $7,500 stipulation of dismissal that was paid to plaintiff); see also Curly Customs, Inc., 62 Mass. App. Ct. at 97-98 (motion to determine an attorney's lien is premature until a party has prevailed and there are proceeds to which the lien can attach). Thus, we

---

[13] Beverly conceded at oral argument that, had, and if, Bass River were to make a payment to Beverly (and thus, proceeds were derived), Attorney Sullivan's attorney's lien would take priority.

9

affirm the Superior Court judge's denial of Attorney Sullivan's motion to enforce the attorney's lien against Beverly.

<u>So ordered</u>.

By the Court (Desmond,
D'Angelo & Toone, JJ.[14]),

*Paul Little*

Clerk

Entered:  March 12, 2025.

---

[14] The panelists are listed in order of seniority.