# Ropes & Gray LLP vs. Craig R. Jalbert.[1]

Suffolk. May 5, 2009. - July 28, 2009.

Present: Marshall, C.J., Ireland, Spina, Cowin, Cordy, Botsford, & Gants, JJ.

*Attorney at Law,* Lien, Attorney-client relationship. *Lien, Supreme Judicial Court,* Certification of questions of law. *Statute,* Construction.

Discussion of the nature of patents and patent prosecution work. [410-411]
This court concluded that G. L. c. 221, § 50, grants a lien on patents and patent applications to a Massachusetts attorney for patent prosecution work performed on behalf of a client, and does not require a judgment before the lien can attach [411-415]; further, if the issued patents or patent applications are sold, the attorney's lien attaches to the proceeds of the sale [415-417].

Certification of questions of law to the Supreme Judicial Court by the United States Court of Appeals for the First Circuit.

*D. Ross Martin (C. Thomas Brown* with him) for the plaintiff.

*Andrew Z. Schwartz (Joshua S. Pemstein* with him) for the defendant.

*Erik Paul Belt, Robert M. Abrahamsen, Michael A. Albert, & Eric G.J. Kaviar,* for Boston Patent Law Association, amicus curiae, submitted a brief.

Spina, J. We consider in the present case, as a matter of first impression, the scope of the Massachusetts attorney's lien statute (lien statute), G. L. c. 221, § 50, vis-à-vis patent prosecution work. The United States Court of Appeals for the First Circuit has certified the following questions to this court, pursuant to S.J.C. Rule 1:03, as appearing in 382 Mass. 700 (1981)[2]:

"1. Does [G. L. c. 221, § 50,] grant a lien on patents

---

[1]As liquidating supervisor of *In re Engage, Inc.,* 315 B.R. 208 (Bankr. D. Mass. 2004), aff'd, 330 B.R. 5 (D. Mass. 2005).

[2]Supreme Judicial Court Rule 1:03, as appearing in 382 Mass. 700 (1981), provides: "This court may answer questions of law certified to it by . . . a Court of Appeals of the United States . . . when requested by the certifying

and patent applications to a Massachusetts attorney for patent prosecution work performed on behalf of a client?

"2. If [G. L. c. 221, § 50,] does grant a lien and the issued patents or patent applications are sold, does the attorney's lien attach to the proceeds of the sale?"

*In re Engage, Inc.*, 544 F.3d 50, 58 (1st Cir. 2008). We answer both of the certified questions in the affirmative.[3]

1. *Background.* We briefly summarize the facts as set forth in the opinion accompanying the certification order, supplemented by details provided in the underlying bankruptcy proceedings. See *In re Engage, Inc.*, 544 F.3d at 51-52; *In re Engage, Inc.*, 315 B.R. 208, 210-211 (Bankr. D. Mass. 2004), aff'd, 330 B.R. 5, 7-8 (D. Mass. 2005).

On June 19, 2003, Engage, Inc., an advertising software company, and certain of its affiliates (collectively, the debtors) filed petitions in the United States Bankruptcy Court for the District of Massachusetts for relief under Chapter 11 of the Bankruptcy Code. See 11 U.S.C. §§ 101 et seq. (2000). Ropes & Gray LLP (Ropes & Gray), which had provided legal services to the debtors from approximately June, 2002, through May, 2003, in connection with the prosecution of various patents, was scheduled as a creditor in the debtors' bankruptcy. In a filing with the Bankruptcy Court, Ropes & Gray asserted that it was owed $108,737.11 for unpaid patent prosecution work performed before June 19, 2003, secured by an attorney's lien under G. L. c. 221, § 50, on "(i) certain patents and patent prosecution actions of the Debtor and (ii) cash proceeds of a prepetition sale of other patents." In addition, Ropes & Gray asserted an unsecured creditor's claim for approximately $49,517.37, primarily for corporate licensing work performed in 2003.

The debtors, who had sold their patents and patent applica-

court if there are involved in any proceeding before it questions of law of this State which may be determinative of the cause then pending in the certifying court and as to which it appears to the certifying court there is no controlling precedent in the decisions of this court."

[3]We acknowledge the amicus brief filed in support of Ropes & Gray LLP by the Boston Patent Law Association.

tions in transactions before and after June 19, 2003,[4] agreed to maintain a cash reserve of $108,737.11 from the sale proceeds, thereby providing Ropes & Gray with adequate protection in the event that pending litigation over the existence and validity of the asserted attorney's lien was resolved in its favor, while also reserving the debtors' rights to object to Ropes & Gray's claims. On May 20, 2004, the Bankruptcy Court entered an order confirming the debtors' second amended plan of liquidation under Chapter 11. Shortly thereafter, the debtors' liquidating supervisor, Craig Jalbert, filed an objection to Ropes & Gray's secured claim, contending, among other things, that G. L. c. 221, § 50, did not apply to patents and patent applications, and, therefore, Ropes & Gray was an unsecured creditor. The Bankruptcy Court agreed, sustaining the liquidating supervisor's objection and concluding that the lien statute did not apply to patent prosecution work. See *In re Engage, Inc.*, 315 B.R. at 210, 213-217.

Ropes & Gray appealed from the Bankruptcy Court's order to the United States District Court for the District of Massachusetts. It also filed a motion requesting that the District Court certify various questions on the lien statute to this court. On September 1, 2005, the District Court affirmed the Bankruptcy Court, concluding that an attorney's lien under G. L. c. 221, § 50, did not attach in favor of Ropes & Gray to the patents, the patent applications, or the proceeds from their resulting sales, based on Ropes & Gray's representation of the debtors in patent prosecution proceedings before the United States Patent and Trademark Office (USPTO). See *In re Engage, Inc.*, 330 B.R. at 5, 7, 14-21. The District Court also rejected Ropes & Gray's request that it certify questions to this court, stating that the issue of the lien statute's applicability to patent prosecution

---

[4]On February 20, 2003, the debtors sold some patents and some patent applications pending in the United States Patent and Trademark Office (USPTO), which yielded $100,000 in cash proceeds. All of these patents and patent applications had been filed and prosecuted by Ropes & Gray on behalf of the debtors. Soon after June 19, 2003, substantially all of the debtors' assets, which included additional patents and patent applications filed and prosecuted by Ropes & Gray, were sold to JDA Software Group, Inc. The Bankruptcy Court ordered that the patents and patent applications be sold free and clear of liens.

work could be resolved by analyzing existing case law. See *id.* at 6 & n.1. The matter was returned to the Bankruptcy Court because its order was not yet "final" within the meaning of 28 U.S.C.A. § 158(d) (West 2006 & Supp. 2008).

On August 15, 2007, Ropes & Gray and the liquidating supervisor filed a joint motion with the Bankruptcy Court, agreeing to liquidate Ropes & Gray's claim. They also agreed that the liquidating supervisor would set aside $27,500, which Ropes & Gray would receive if ultimately it were found to have a secured claim. In its final order issued on September 10, 2007, the Bankruptcy Court approved this compromise and disallowed Ropes & Gray's secured claim. Ropes & Gray appealed, and on December 28, 2007, the District Court affirmed this final order on the grounds set forth in its September 1, 2005, decision.

Ropes & Gray appealed to the United States Court of Appeals for the First Circuit and again requested that questions regarding the lien statute be certified to this court. Finding no controlling precedent on whether G. L. c. 221, § 50, applies to patent prosecution work, and, if so, whether the attorney's lien attaches to proceeds from the sale of issued patents or patent applications, and concluding that this State law issue could be determinative of Ropes & Gray's cause of action, the Court of Appeals certified the two questions now before us. See *In re Engage, Inc.*, 544 F.3d at 52-58.

2. *Nature of patent prosecution work.* Before considering the specifics of the lien statute, we highlight a few pertinent details about the nature of patents and patent prosecution work. A patent confers on its owner the right to exclude others from making, using, offering for sale, or selling the patented invention. See 35 U.S.C. § 154(a)(1) (2006). See also 35 U.S.C. § 271 (2006) (action for infringement of patent). Fundamentally, a patent is a property right. See 35 U.S.C. § 261 (2006) ("patents shall have the attributes of personal property"); *Connell* v. *Sears, Roebuck & Co.*, 722 F.2d 1542, 1548 (Fed. Cir. 1983) ("the right to exclude recognized in a patent is but the essence of the concept of property"); *Carl Schenck, A.G.* v. *Nortron Corp.*, 713 F.2d 782, 784 (Fed. Cir. 1983) (patent is exemplification of property right). This property interest, even at the patent application stage, is freely assignable. See 35 U.S.C. § 261 ("Applications for patent,

patents, or any interest therein, shall be assignable in law by an instrument in writing").

Unlike a typical lawsuit, proceedings before the USPTO are not considered adversary in nature.[5] See *Beckman Instruments, Inc.* v. *Chemtronics, Inc.*, 439 F.2d 1369, 1378-1379 (5th Cir.), cert. denied, 400 U.S. 956 (1970) ("our patent system could not function successfully if applicants were allowed to approach the Patent Office as an arm's length adversary"). See also *Pacific Gas & Elec. Co.* v. *United States*, 69 Fed. Cl. 784, 794-795 (2006), and cases cited (application for initial issuance of patent is primarily ex parte administrative proceeding, not one of adversary nature). Patent applicants and attorneys have an obligation to make full and candid disclosure of all relevant information. See *Kingsland* v. *Dorsey*, 338 U.S. 318, 319 (1949); *Charles Pfizer & Co.* v. *Federal Trade Comm'n*, 401 F.2d 574, 579 (6th Cir. 1968), cert. denied, 394 U.S. 920 (1969). See also 37 C.F.R. § 1.56(a) (2008) ("Each individual associated with the filing and prosecution of a patent application has a duty of candor and good faith in dealing with the [USPTO], which includes a duty to disclose to the [USPTO] all information known to that individual to be material to patentability").

3. *Scope of G. L. c. 221, § 50.* We turn now to the certified questions before us. In Massachusetts, an attorney has a statutory right to assert a lien to secure compensation for the attorney's

---

[5]Proceedings before the USPTO to secure a patent are not themselves considered adversary, but actions by a third party may impart an adversary tone to the process. Even though patent applications shall be kept in confidence by the USPTO, subject to certain limited exceptions, see 35 U.S.C. § 122 (2006), a third party may become aware of the existence of a particular application. If that third party has knowledge of prior art or public use that would affect the patentability of the invention, the third party may submit "a protest" citing the prior art or public use and explaining why, in the third party's opinion, a patent should not be issued. See 37 C.F.R. § 1.291 (2008). The third-party protester is not afforded any additional opportunity to communicate with the USPTO regarding the patent application. See *id.* However, a final decision by the USPTO in favor of patentability can be challenged by a third party in an appeal to the board of patent appeals and interferences. See 35 U.S.C. § 134(c) (2006). In addition, and more generally, the multistage process before the USPTO of patent application submissions, rejections, and resubmissions, no doubt involving considerable debate and persuasion, suggests at least some adversary dimension to the process. See *Advanced Cardiovascular Sys., Inc.* v. *C.R. Bard, Inc.*, 144 F.R.D. 372, 376 (N.D. Cal. 1992).

provision of legal services. General Laws c. 221, § 50, as appearing in St. 1945, c. 397, § 1, provides, in relevant part:

> "From the authorized commencement of an action, counterclaim or other proceeding in any court, or appearance in any proceeding before any state or federal department, board or commission, the attorney who appears for a client in such proceeding shall have a lien for his reasonable fees and expenses upon his client's cause of action, counterclaim or claim, upon the judgment, decree or other order in his client's favor or made in such proceeding, and upon the proceeds derived therefrom."

Prior to its revision in 1945, the lien statute read:

> "An attorney who is lawfully possessed of an execution, or who has prosecuted a suit to final judgment in favor of his client, shall have a lien thereon for the amount of his fees and disbursements in the cause, but this section shall not prevent the payment of the execution or judgment to the judgment creditor by a person who has no notice of the lien."

G. L. (Ter. Ed.) c. 221, § 50.

We are guided in our analysis of the current version of G. L. c. 221, § 50, by the familiar maxim that a statute must be interpreted "according to the intent of the Legislature ascertained from all its words construed by the ordinary and approved usage of the language, considered in connection with the cause of its enactment, the mischief or imperfection to be remedied and the main object to be accomplished, to the end that the purpose of its framers may be effectuated." *Hanlon* v. *Rollins*, 286 Mass. 444, 447 (1934). See *Sullivan* v. *Brookline*, 435 Mass. 353, 360 (2001). Where the language of a statute is unambiguous, it is conclusive of the Legislature's purpose. See *Pyle* v. *School Comm. of S. Hadley*, 423 Mass. 283, 285-286 (1996), and cases cited. A statute should be construed so as to give effect to each word, and no word shall be regarded as surplusage. See *Wolfe* v. *Gormally*, 440 Mass. 699, 704 (2004); *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, 427 Mass. 136, 140 (1998). When amending a statute or enacting a new one, the Legislature is

presumed to be aware of prior statutory language. See *Commonwealth* v. *Callahan*, 440 Mass. 436, 440-441 (2003); *Charland* v. *Muzi Motors, Inc.*, 417 Mass. 580, 582-583 (1994).

An attorney's lien under G. L. c. 221, § 50, is a tool for the recovery of legal fees, one which is more effective than a traditional action in contract or quantum meruit. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993). The enactment of the lien statute was designed to protect, as a matter of public policy, an attorney's right to compensation for the rendering of legal services. See *id.* See also *PGR Mgt. Co., Heath Props.* v. *Credle*, 427 Mass. 636, 640 (1998). "[T]he attorney's lien protects attorneys 'against the knavery of their clients, by disabling the clients from receiving the fruits of recoveries without paying for the valuable services by which the recoveries were obtained.' " *Boswell* v. *Zephyr Lines, Inc.*, *supra*, quoting *Matter of Heinsheimer*, 214 N.Y. 361, 364 (1915). In addition, by ensuring that attorneys will be paid for their work, the lien statute serves an important societal goal of providing access to legal services for clients who otherwise could not afford such services. See *PGR Mgt. Co., Heath Props.* v. *Credle*, *supra.*

By its substantial amendment of the lien statute in 1945, the Legislature significantly expanded an attorney's right to recover legal fees for services rendered to a client in a variety of proceedings. The language of G. L. c. 221, § 50, states that an attorney shall have a lien for reasonable fees and expenses not only from the "authorized commencement of an action, counterclaim or other proceeding in any court," but also from the "appearance in any proceeding before any state or federal department, board or commission." When an attorney files a patent application for a client with the USPTO, that action constitutes appearing in a proceeding before a Federal department.[6] See 35 U.S.C. § 1 (2006) (USPTO was established as agency of United States,

---

[6]We have stated that an attorney "appears" for a client when the attorney files a notice of appearance, or files any pleading, motion, or other paper on behalf of the client. See *Boswell* v. *Zephyr Lines, Inc.*, 414 Mass. 241, 248 (1993), citing Mass. R. Civ. P. 11 (b), 365 Mass. 753 (1974). In the context of patent prosecution work, "[w]hen a patent practitioner acting in a representative capacity appears in person or signs a paper in practice before the [USPTO] in a patent case, his or her personal appearance or signature shall constitute a representation to the United States Patent and Trademark Office that under the provisions of this subchapter and the law, he or she is authorized to represent

within Department of Commerce); 37 C.F.R. § 10.1 (2008) ("proceeding" before USPTO includes application for patent). Moreover, the broadening of the statute suggests a recognition by the Legislature that attorneys are entitled to be compensated for the work they perform that falls outside the purview of traditional litigation "in any court."

In assessing the scope of an attorney's lien for reasonable fees and expenses, the language of G. L. c. 221, § 50, provides that the attorney shall have a lien "*upon* his client's cause of action, counterclaim or claim, *upon* the judgment, decree or other order in his client's favor entered or made in such proceeding, and *upon* the proceeds derived therefrom." In the context of patent prosecution work, the patent application is the client's "claim." It is a request for recognition of a property right whereby an inventor can exclude all others from making, using, or selling a patented invention for a designated period of time. Therefore, in accordance with the first phrase of the "upon" clause, when rendering legal services to a client to secure a patent, an attorney can assert a lien on the patent application when it is filed with the USPTO, and the lien necessarily remains attached to the subsequently issued patent, protecting the attorney's right to compensation.

Contrary to the argument of the liquidating supervisor, the language of G. L. c. 221, § 50, does not require a "judgment" in order for an attorney's lien to attach. The repetition of the word "upon" in the statute describes three separate and independent bases for the assertion of an attorney's lien, namely (1) "upon [the] client's cause of action, counterclaim or claim," (2) "upon the judgment, decree or other order in [the] client's favor entered or made in such proceeding," and (3) "upon the proceeds derived therefrom." Interpreting the statute as requiring a "judgment" before a lien can attach would render superfluous the words in the first "upon" clause. As we have already stated, every word of a statute must be given effect. See *Bankers Life & Cas. Co.* v. *Commissioner of Ins.*, *supra.* Had the Legislature intended to limit the parameters of the lien statute to only those instances when an attorney has obtained a judgment, then the

the particular party on whose behalf he or she acts." 37 C.F.R. § 1.34 (2008). Here, no party has disputed the fact that Ropes & Gray was authorized to appear before the USPTO in patent prosecution work on behalf of the debtors.

Legislature simply would have said that the attorney shall have a lien for his reasonable fees and expenses "upon the judgment, decree or other order in his client's favor," and nothing more.[7] In essence, that was the import of the pre-1945 version of the lien statute, requiring prosecution of "a suit to final judgment," see G. L. (Ter. Ed.) c. 221, § 50, and the Legislature chose to broaden its scope.[8]

4. *Attachment of attorney's lien to sale proceeds.* Consistent with our determination that an attorney is entitled to a lien for reasonable fees and expenses on patents and patent applications under G. L. c. 221, § 50, we conclude that the attorney's lien also attaches to the proceeds from the sale of such a property right.[9] The third basis for the assertion of an attorney's lien,

[7] In light of our conclusion that the three "upon" clauses in G. L. c. 221, § 50, describe separate and independent bases for the assertion of an attorney's lien, we need not decide whether a patent constitutes an "order" of the USPTO in the client's favor to which a lien may attach. The refusal of a patent by the director may be considered a "final order" from which an appeal can be filed. See *Synthetic Plastics Co.* v. *Ellis-Foster Co.*, 78 F.2d 847, 848 (3d Cir. 1935). However, in many instances, following examination of the patent application, the director simply will issue the patent, thereby conferring property rights on its holder. See 35 U.S.C. § 131 (2006).

[8] The liquidating supervisor has argued that one consequence of a more expansive reading of G. L. c. 221, § 50, is that attorneys will attempt to assert liens on copyrights, taxicab medallions, nursing home licenses, zoning variances, building permits, liquor licenses, environmental permits, and the like. We recognize that when the lien statute was amended in 1945, there were fewer administrative proceedings than there are today. Nonetheless, the expansion of the statute's language reflects a recognition by the Legislature that attorneys perform valuable services for their clients not only in court, but also in administrative proceedings, and that attorneys should be able to recover reasonable fees and expenses for their work. Such an expansion of the statute is the province of the Legislature, not the judiciary. See *Connors* v. *Boston*, 430 Mass. 31, 42-43 (1999). "We are not free to ignore or to tamper with [a] clear expression of legislative intent. If the law is to be changed, the change can only be made by the Legislature." *Commonwealth* v. *Jones*, 417 Mass. 661, 664 (1994). We add that, with respect to administrative proceedings, the Legislature did limit the applicability of G. L. c. 221, § 50, to "proceedings before any *state* or *federal* department, board or commission" (emphasis added).

[9] The United States Court of Appeals for the First Circuit noted that if this court concludes that G. L. c. 221, § 50, applies to patent prosecution work, then the status of Ropes & Gray's claim as to postpetition sale proceeds may hinge on Federal, rather than State, law. See *In re Engage, Inc.*, 544 F.3d 50, 53 n.5 (1st Cir. 2008). Nonetheless, the Court of Appeals further stated that the answer to the second certified question still will be determinative as to prepetition sale proceeds. See *id.*

"upon the proceeds derived therefrom," relates back to the two prior clauses, not just the immediately preceding clause. Had the Legislature intended to limit the scope of the attorney's lien to only those proceeds derived from a "judgment," then it would have so specified.[10] Moreover, the clear intent of the Legislature in enacting G. L. c. 221, § 50, was to provide protection to the unpaid attorney, and in the context of patent prosecution work, this intent would be wholly frustrated if the lien did not attach to the proceeds derived from the sale of the patent or patent application.

In accordance with the purpose of the lien statute, actual payment for the provision of legal services, particularly with respect to an insolvent client, occurs when there are "proceeds" of a claim or judgment from which to make such payment.[11] Given the unique procedure by which an inventor attempts to secure a patent, the USPTO, unlike a court, will not issue a "judgment, decree or other order" compelling the inventor to take specified actions or pay certain monies to other parties. The USPTO simply will issue a notice of allowance and then grant the patent, see 35 U.S.C. § 151 (2006) (written notice of allowance of application and issuance of patent); 37 C.F.R. §§ 1.311, 1.314 (same), thereby conferring valuable property rights on its owner, which subsequently may be sold. Irrespective of the type of proceeding in

---

[10]At the same time as the Legislature amended the lien statute in 1945, it added G. L. c. 221, § 50A, inserted by St. 1945, c. 397, § 1, which relates to the discharge of the Commonwealth or its political subdivisions from liability for any attorney's liens, and provides: "Payment by the commonwealth or by any political subdivision thereof to a client in full or in settlement of *any claim, counterclaim, cause of action, judgment, execution, order or decree* shall discharge the commonwealth or such political subdivision from all liability *on account of any attorney's liens thereon or on the proceeds derived therefrom* unless the state treasurer or the treasurer of such political subdivision, as the case may be, has received written notice from an attorney having a lien under [§ 50] that he claims such lien" (emphasis added). Consistent with our interpretation of G. L. c. 221, § 50, the plain language of § 50A reinforces our conclusion that "proceeds" relate to both "any claim, counterclaim, [or] cause of action," and to any "judgment, execution, order or decree."

[11]In the context of a patent prosecution, when an attorney first appears before the USPTO, the lien that may attach to his client's patent application pursuant to G. L. c. 221, § 50, is an inchoate lien. It matures and becomes choate when proceeds are derived from the sale of the patent or patent application to which the lien is attached.

which legal services are rendered, the plain language of G. L. c. 221, § 50, dictates that an attorney shall have a lien "upon his client's . . . claim" *and* "upon the proceeds derived therefrom." G. L. c. 221, § 50.[12] The purpose of the lien statute would be eviscerated if an inventor could just sell a valuable property right, one that was obtained by the attorney's work in the first instance, and pocket the proceeds. This construction of the lien statute is entirely consistent with what occurs when other types of property are sold subject to a commercial lien. See G. L. c. 106, § 9-203 (f) ("The attachment of a security interest in collateral gives the secured party the rights to proceeds provided by Section 9-315 . . ."); G. L. c. 106, § 9-315 (a) (2) ("a security interest attaches to any identifiable proceeds of collateral"). See also U.C.C. §§ 9-203, 9-306, 3 U.L.A. 129-130, 167 (Master ed. 2002) (same). A patent attorney who successfully secures a patent for his client in proceedings before the USPTO is entitled to the same protection under G. L. c. 221, § 50, as an attorney who obtains a favorable judgment for his client in court.

5. *Conclusion.* For the reasons stated, we answer both of the certified questions in the affirmative. The Reporter of Decisions is to furnish attested copies of this opinion to the clerk of this court. The clerk in turn will transmit one copy, under the seal of this court, to the clerk of the United States Court of Appeals for the First Circuit, as the answers to the questions certified, and will also transmit a copy to each party. See, e.g., *Nett* v. *Bellucci*, 437 Mass. 630, 648 (2002).

---

[12]In a similar vein, an attorney is entitled to recover reasonable fees and expenses pursuant to G. L. c. 221, § 50, where a client receives "proceeds derived" from a "cause of action" as a result of a settlement. *Kourouvacilis* v. *American Fed'n of State, County & Mun. Employees*, 65 Mass. App. Ct. 521, 521 n.1 (2006), quoting G. L. c. 221, § 50.